## PITTMAN, CLERK OF THE SUPERIOR COURT OF BALTIMORE, *v.* HOME OWNERS' LOAN CORP.

No. 10.   Argued October 12, 13, 1939.—Decided November 6, 1939.

*Messrs. H. Vernon Eney,* Assistant Attorney General of Maryland, and *William C. Walsh,* Attorney General,

22

with whom *Mr. William L. Henderson,* Deputy Attorney General, was on the brief, for petitioner.

24

26

*Solicitor General Jackson,* with whom *Assistant Attorney General Clark* and *Messrs. Sewall Key, Warner W. Gardner, Berryman Green,* and *Harold Lee* were on the brief, for respondent.

28

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The Home Owners' Loan Corporation brought this proceeding in the Baltimore City Court for a writ of mandamus requiring the Clerk of the Superior Court of Baltimore to record a mortgage executed to the Corporation upon the payment of the ordinary recording charge and without affixing stamps for the state recording tax. Demurrer to the petition was overruled, the Clerk did not avail himself of the opportunity to answer, and mandamus was granted. The order was affirmed by the Court of Appeals. 175 Md. 512; 2 A. 2d 689. We granted certiorari. 306 U. S. 628.

The Maryland statute imposes a tax upon every mortgage, recorded or offered for record, at the rate of ten cents for each $100, or fraction thereof, of the principal amount of the debt secured by the mortgage.[1] As the Home Owners' Loan Corporation is expressly declared to be an instrumentality of the United States (Home

---

[1] The Act provides for a "Tax on the Recordation of Instruments in Writing" as follows:

"A tax is hereby imposed upon every instrument of writing recorded or offered for record with the Clerks of the Circuit Courts of the respective Counties, or the Clerk of the Superior Court of Baltimore City, on and after June 1, 1937, to and including September 30th, 1939, including mechanics liens, deeds, mortgages (except purchase money mortgages), chattel mortgages, bills of sale, conditional contracts of sale, leases, confessed judgments, magistrates' judgments, crop liens, deeds of trust, and any and all other instruments of writing, so recorded or offered for record, which create liens or incumbrances on real or personal property, or convey title to real or personal property; provided, however, that said tax shall not apply to assignments of

Owners' Loan Act of 1933, c. 64, 48 Stat. 128) and the mortgage was acquired in that capacity, the Court of Appeals held the tax as thus applied to be invalid.

The court relied upon our decision in *Federal Land Bank* v. *Crosland*, 261 U. S. 374. The question there related to a tax imposed by Alabama as a condition for the recording of a mortgage executed to a Federal Land Bank. The Federal Farm Loan Act of 1916 provides that first mortgages executed to Federal Land Banks shall be deemed "instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt from Federal, State, municipal, and local taxation." 39 Stat. 360, 380. We held that the state tax, as distinguished from a reasonable fee to meet the expenses of the registry, constituted a general tax on mortgages, using the condition attached to registration as a practical mode of collecting it, and that the tax on the mortgage in question was beyond the power of the State.

Petitioner suggests that the *Crosland* case may be distinguished; that the Alabama tax was imposed on the lender, whereas the Maryland tax is on the privilege of recording the instrument and the statute is silent as to

---

mortgages, purchase money mortgages, absolute or partial releases, or orders of satisfaction."

"The tax hereby imposed shall be at the rate of 10¢ for each $100, or fractional part thereof, of the actual consideration paid or to be paid, for the property transferred, in the case of instruments conveying title, and at the rate of 10¢ for each $100, or fractional part thereof, of the principal amount of the debt secured, in the case of instruments securing a debt, or reserving title as security for a debt."

"In addition to the tax hereby imposed, the Clerks shall collect a charge of 50¢ for each such instrument recorded or offered for record." Acts of 1937, Chap. 11, Code of Maryland, Art. 81, § 213.

The same Act, in § 214, provides for the affixing of stamps to cover the tax and makes it unlawful for any person to record any written instrument without providing for the payment of the tax, as stated.

the one who shall pay the tax; also that the Federal Farm Loan Act expressly declared the mortgages of Federal Land Banks to be instrumentalities of the Federal Government. The Court of Appeals thought these differences to be immaterial. As to the first, the court rightly observed that in the *Crosland* case the provision for the payment of tax by the lender was regarded as having no determining significance. We said that "whoever pays it it is a tax upon the mortgage and that is what is forbidden by the law of the United States." 261 U. S., pp. 378, 379. Here, also, the tax is imposed upon the mortgage and is graded according to the amount of the loan,[2] and the condition attached to the registration is a practical method of collection. The recording sought was for the protection of the interest of the Home Owners' Loan Corporation. In fact, the mortgage in the instant case was offered for record by the Corporation and the tax was demanded from the Corporation.

The second suggested distinction rests upon the terms of the Home Owners' Loan Act. That provides[3] that the Home Owners' Loan Corporation, its franchise, capital, reserves and surplus, and its loans and income shall be exempt from all state or municipal taxes. The critical term, in the present relation, is *"loans."* We think that this term, in order to carry out the manifest purpose of the broad exemption, should be construed as covering the entire process of lending, the debts which result therefrom and the mortgages given to the Corporation as security. The Home Owners' Loan Act requires that the loans made by the Corporation "shall be secured by

---

[2] See Note 1.

[3] Section 4 (c) of the Home Owners' Loan Act provides: "The bonds issued by the Corporation under this subsection shall be exempt, both as to principal and interest, from all taxation (except surtaxes, estate, inheritance, and gift taxes) now or hereafter imposed by the United States or any District, Territory, dependency, or possession thereof, or

a duly recorded home mortgage." [4] Both the mortgage and its recordation were indispensable elements in the lending operations authorized by Congress. We agree with the state court that there is no sound distinction which makes inapplicable the reasoning which was decisive in the *Crosland* case.

Alive to this consideration, petitioner advances a broader contention, asking us to review and overrule the *Crosland* decision as being out of harmony with correct principle. Petitioner insists that the tax is not discriminatory; that it does not impose a burden upon the Home Owners' Loan Corporation; and that if the Act of Congress be construed as conferring an immunity, it went beyond the power of Congress, as Congress cannot "grant an immunity of greater extent than the constitutional immunity."

We assume here, as we assumed in *Graves* v. *New York ex rel. O'Keefe,* 306 U. S. 466, that the creation of the Home Owners' Loan Corporation was a constitutional exercise of the congressional power and that the activities of the Corporation through which the national government lawfully acts must be regarded as governmental functions and as entitled to whatever immunity attaches to those functions when performed by the government itself through its departments. *McCulloch* v. *Maryland,* 4 Wheat. 316, 421, 422; *Smith* v. *Kansas City Title Co.,* 255 U. S. 180, 208, 209; *Graves* v. *New York ex rel. O'Keefe, supra.* Congress has not only the power to create a corporation to facilitate the performance of gov-

---

by any State, county, municipality, or local taxing authority. The Corporation, including its franchise, its capital, reserves and surplus, and its loans and income, shall likewise be exempt from such taxation; except that any real property of the Corporation shall be subject to taxation to the same extent, according to its value, as other real property is taxed." 48 Stat. 128, 130; 12 U. S. C. 1463.

[4] § 4 (e) (f); 48 Stat. 131; 12 U. S. C. 1463 (e) (f).

ernmental functions, but has the power to protect the operations thus validly authorized. "A power to create implies a power to preserve." *McCulloch* v. *Maryland, supra,* p. 426. This power to preserve necessarily comes within the range of the express power conferred upon Congress to make all laws which shall be necessary and proper for carrying into execution all powers vested by the Constitution in the Government of the United States. Const. Art. I, § 8, par. 18. In the exercise of this power to protect the lawful activities of its agencies, Congress has the dominant authority which necessarily inheres in its action within the national field. *The Shreveport Case,* 234 U. S. 342, 351, 352. The exercise of this protective power in relation to state taxation has many illustrations. See, e. g., *Bank* v. *Supervisors,* 7 Wall. 26, 31; *Choate* v. *Trapp,* 224 U. S. 665, 668, 669; *Smith* v. *Kansas City Title Co., supra,* p. 207; *Trotter* v. *Tennessee,* 290 U. S. 354, 356; *Lawrence* v. *Shaw,* 300 U. S. 245, 249. In this instance, Congress has undertaken to safeguard the operations of the Home Owners' Loan Corporation by providing the described immunity. As we have said, we construe this provision as embracing and prohibiting the tax in question. Since Congress had the constitutional authority to enact this provision, it is binding upon this Court as the supreme law of the land. Const. Art. VI.

The judgment of the state court is

*Affirmed.*

Mr. Justice Butler took no part in the consideration and decision of this case.