**WILSON PARTNERS, L.P., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

**Academic Properties, Inc., Petitioner,**

v.

**Commonwealth of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 1998.
Decided Jan. 26, 1999.

---

conveying the property was executed and recorded in January 1994. Academic Properties executed a sales agreement with the FDIC for real estate located in the city of Philadelphia;[2] the deeds conveying the property were executed and recorded in February 1994. At the time the deeds were recorded, the Taxpayers paid the Pennsylvania realty transfer tax. Both Taxpayers subsequently petitioned for refund of at least half of the amount of the tax paid, and in the alternative, for refund of the entire amount on the ground that imposition of the tax constituted a violation of their rights under the state and federal constitutions. The Department of Revenue denied the refunds, and the Board of Finance and Revenue affirmed.

Joseph C. Bright, Philadelphia, for petitioners.

Ronald H. Skubecz, Senior Deputy AG, Harrisburg, for respondent.

Before COLINS, President Judge, and DOYLE, J., McGINLEY, J., SMITH, J., PELLEGRINI, J., KELLEY, J., and FLAHERTY, J.

COLINS, President Judge.

Wilson Partners and Academic Properties (collectively, Taxpayers) petition for review of the Board of Finance and Revenue orders denying their petitions for refund of realty transfer tax.

In separate, unrelated transactions, the Taxpayers entered into sale and purchase agreements with the Federal Deposit Insurance Corporation (FDIC), and the FDIC subsequently conveyed certain properties to the Taxpayers pursuant to those agreements. At the time of the transactions, the FDIC was receiver of Meritor Savings Bank. Wilson Partners executed a sales agreement with the FDIC for real estate located in Chester County, Pennsylvania;[1] the deed

On appeal,[3] the Taxpayers argue that the Pennsylvania realty transfer tax act (Act)[4] unconstitutionally imposes an unequal tax burden on a nonexempt party who enters into a taxable real estate transaction with an exempt party, and discriminates against the federal government in violation of the Supremacy Clause of the U.S. Constitution by requiring a nonexempt party to a transaction with the federal government to pay the tax at twice the rate applicable to a transaction with nongovernment party.

The Act provides that

[e]very person who makes, executes, delivers, accepts or presents for recording any document or in whose behalf any document is made, executed, delivered, accepted or presented for recording, shall be subject to pay for and in respect to the transaction or any part thereof, ... a State tax at the rate of one percent of the value of the real estate represented by such document, which State tax shall be payable at the earlier of the time the document is presented for recording or within thirty days of acceptance of such document....

---

1. The property is located at 601 Lee Road, Tredyffrin Township.

2. The property consisted of four parcels located at 3001–23, 3025–53, 3101–57 (rear), and 3101–57 Market Street. The sales agreement was executed by the FDIC and Bert Landau, who immediately assigned his interests in the agreement to Academic Properties.

3. The Court hears determinations of the Board of Finance and Revenue in its appellate jurisdic-

tion, but its review is de novo. *Sabatine v. Commonwealth*, 497 Pa. 453, 442 A.2d 210 (1981).

4. Sections 1101–C to 1113–C of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of May 5, 1981, P.L. 36, *as amended*, 72 P.S. §§8101–C—8113–C. The Act of May 5, 1981 repealed the predecessor realty transfer tax act, which was reported at 72 P.S. §§3283–3292. The imposition of the tax in the current act remains essentially the same as under the predecessor act.

Section 1102–C of the Act, 72 P.S. §8102–C. Section 1102–C.2 of the Act exempts from payment of the tax, the United States, the Commonwealth, and their instrumentalities, agencies, and political subdivisions. 72 P.S. §8102–C.2.[5] Section 1102–C.3 excludes from imposition of the tax certain transfers, such as transactions involving no consideration, transactions between family members, and transactions involving condemned and tax-delinquent property. 72 P.S. §8102–C.3.[6]

■■■■ The realty transfer tax is a tax upon the transaction, the transfer of title to real estate as evidenced by a document that is to be recorded.[7] *Sablosky v. Messner,* 372 Pa. 47, 92 A.2d 411 (1952); *Commonwealth v. Willson Products, Inc.,* 412 Pa. 78, 194 A.2d 162 (1963); *Comach Construction, Inc. v. City of Allentown,* 159 Pa.Cmwlth. 605, 633 A.2d 1336 (1993), *petition for allowance of appeal denied,* 539 Pa. 682, 652 A.2d 1327 (1994). The Act does not require that buyer and seller each pay half of the tax due. The Act imposes a single tax on the transaction with liability for the full amount of the payment on both parties; the parties' responsibility for the tax may be discharged as they agree. *Sablosky.* Liability for payment of the tax is joint and several, except when one of the parties is an exempt party.[8] The excluded status of one party does not relieve the other parties from liability for the full amount of the tax. 61 Pa.Code §91.192(b).

The Taxpayers argue that because they transacted with an exempt party, the taxing scheme unfairly imposes liability for the entire one-percent tax due, whereas in transactions between nonexempt parties, the parties share the tax liability. The Taxpayers suggest that the Act creates two classes of taxpayers—exempt and nonexempt parties to a taxable transaction—without a reasonable and legitimate distinction and that it imposes

substantially unequal tax burdens on similarly situated parties in violation of the Fourteenth Amendment's Equal Protection Clause and the Uniformity Clause of the Pennsylvania Constitution.

■■■■ The Uniformity Clause of the Pennsylvania constitution provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." [9] In matters of taxation, allegations of violations of the Equal Protection Clause and the Uniformity Clause are analyzed in the same manner. *Leonard v. Thornburgh,* 507 Pa. 317, 489 A.2d 1349 (1985). In matters of taxation, the legislature possesses wide discretion, and the burden is on the taxpayer to demonstrate that a classification made for purposes of taxation is unreasonable. *Id.*

■■■■ Classification for tax purposes is valid when it is based upon some legitimate distinction between the classes that provides a reasonable basis for the difference in treatment. *Tool Sales Service Co., Inc. v. Commonwealth,* 536 Pa. 10, 637 A.2d 607 (1993), *cert. denied sub nom Tom Mistick & Sons, Inc. v. Pennsylvania,* 513 U.S. 822, 115 S.Ct. 85, 130 L.Ed.2d 37 (1994). When no legitimate distinction distinguishes the classes and the taxing scheme imposes substantially unequal tax burdens on persons otherwise similarly situated, the tax is unconstitutional. *Id.*

■■■■ In this case, the realty transfer tax is imposed on all transactions that result in a real transfer, for consideration, of a beneficial interest in real estate. *Sablosky.* The transfer tax is an excise tax, imposed on the right to exercise the privilege of transferring beneficial ownership of property, and its payment is made a condition precedent to the recording of the instrument of transfer. As stated by the Supreme Court in *Sablosky,*

---

**5.** Added by Section 11 of the Act of July 2, 1986, P.L. 318.

**6.** Added by Section 11 of the Act of July 2, 1986, P.L. 318, *as amended..*

**7.** "Document" as it is used in the Act, refers to "[a]ny deed, instrument or writing which conveys, transfers, devises, vests, confirms or evidences any transfer or devise of title to real estate...." Section 1101–C of the Act, 72 P.S. §8101–C.

**8.** 61 Pa.Code §§91.111 and 91.191. "Each party to a document is jointly and severally liable for the tax imposed by this chapter, unless the party is an [exempt] party or the document evidences an excludable transaction." 61 Pa.Code §91.191.

**9.** Pa. Const. art. VIII, §1.

both parties to the transaction are legally liable for the full amount of the tax.

■ The only classification of taxpayers created in the taxing statute distinguishes exempt and nonexempt parties. By exempting the United States, the Commonwealth, and their instrumentalities, agencies, and political subdivisions, the Act in effect distinguishes governmental taxpayers. This classification rests on the reasonable distinction between governmental and nongovernmental parties to real estate transfer transactions. As a matter of public policy, a state may exempt itself and its agencies, instrumentalities, and political subdivisions. Were it not for the exemption in the case of the realty transfer tax, the state government would in effect be taxing itself and its subdivisions and instrumentalities for a privilege it confers.

In the case of the United States government, the exemption notwithstanding, the state could not collect the transfer tax. In the absence of an express waiver, the United States and its agencies and instrumentalities have sovereign immunity from state taxation that places a direct and substantial burden on the government or on its exercise of its functions.[10] Furthermore, under substantially similar versions of the taxing statute, federal courts have ruled that the Commonwealth may not collect the realty transfer tax from the United States.[11]

■ Contrary to the Taxpayers' contentions, the exempt status of one party to a real estate transfer transaction does not result in the other party paying twice the amount of tax otherwise owed by that party.

As we stated above, both parties to a transaction are liable for the full amount of the transfer tax, and the classification of governmental parties as exempt does nothing to increase the liability of a nonexempt party. As a practical matter, in most taxable transfers the parties have apportioned the tax liability by agreement. Where the parties have not agreed to apportion the amount of the transfer tax, the liability inevitably falls upon the party that presents the instrument for recording; that party may then seek contribution from the other party.

■ Next we address the Taxpayers' argument that the taxing scheme discriminates against the federal government by requiring a nonexempt party to a transaction with the federal government to pay the transfer tax at twice the rate applicable to a transaction with nongovernment party. A state law is unconstitutional under the Supremacy Clause only if it regulates or burdens the United States directly or discriminates against the federal government or those with whom it deals. *North Dakota v. United States*, 495 U.S. 423, 434, 110 S.Ct. 1986, 109 L.Ed.2d 420 (1990). "The nondiscrimination rule finds its reason in the principle that the States may not directly obstruct the activities of the Federal Government." *Id.* at 437–38, 110 S.Ct. 1986. Since a regulation imposed on those who deal with the government has as much potential to obstruct governmental functions as a regulation imposed on the government itself, to sustain constitutional challenge the regulation must be imposed equally on other similarly situated constituents of the state. *Id.* at 438, 110

10. *See e.g., McCulloch v. Maryland,* 17 U.S. 316 (4 Wheat.), 4 L.Ed. 579 (1819) (voiding state tax on the Bank of the United States, an instrumentality of the United States); *Kern–Limerick, Inc. v. Scurlock,* 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546 (1954) (invalidating direct sales tax on U.S. government under the doctrine of sovereign immunity in the absence of clear congressional mandate waiving immunity).

11. In *United States v. Knapp,* 168 F.Supp. 386 (M.D.Pa.1959), the Crawford County recorder of deeds refused to record a deed without payment of the tax by the United States. The transaction involved an involuntary transfer from the property owner-mortgagor to Farmers' Home Administration, an agency of the U.S. government. Citing *Kern–Limerick,* the court concluded that the state could not tax the United States. Subse-

quent attempts to impose the tax on the United States met with the same result. After *Knapp,* the taxing statute was amended to mandate that the tax be paid out of the proceeds of any judicial sale before payment of any other claims. In *United States v. Dougherty,* 199 F.Supp. 48 (M.D.Pa.1961), *affirmed,* 311 F.2d 627 (3 rd Cir. 1962), another case involving a transfer to the Farmers' Home Administration, the court concluded even with amendment, "the result is the same,—the United States is being taxed and that cannot be." 199 F.Supp. at 50. The *Dougherty* court refused to permit payment of the tax out of the sale proceeds, thereby excluding the transaction rather than exempting one of the parties; however, both cases involved involuntary transfers of property to the FHA.

S.Ct. 1986. A "[s]tate does not discriminate against the federal government and those with whom it deals unless it treats someone else better than it treats them." *Id.* (quoting *Washington v. United States,* 460 U.S. 536, 544–45, 103 S.Ct. 1344, 75 L.Ed.2d 264 (1983)). In the instant case, parties who transact with the United States are no worse off than nonexempt parties who transact with other nonexempt parties. Furthermore, we have already rejected the Taxpayers' contention that the taxing scheme imposes twice the normal tax liability on a nonexempt party in a transaction with the federal government.

For the reasons stated above, we affirm the decision of the Board of Finance and Revenue and enter judgment in favor of the Commonwealth.

### *ORDER*

AND NOW, this 26th day of January, 1999, judgment in the above-captioned matter is entered in favor of the Commonwealth. Judgment becomes final unless exceptions are filed within thirty (30) days of the entry of this order pursuant to Pa. R.A.P. 1571(i).