### ELK HAVEN NURSING HOME ASSOCIATION, INC., Petitioner,

v.

### COMMONWEALTH of Pennsylvania, Respondent.

Commonwealth Court of Pennsylvania.

Argued April 15, 1999.

Decided Aug. 18, 1999.

Bradley J. Kraus, Johnsonburg, for petitioner.

Ronald H. Skubecz, Harrisburg, for respondent.

Before DOYLE, J., LEADBETTER, J., and McCLOSKEY, Senior Judge.

DOYLE, Judge,

Before this Court is an appeal by the Elk Haven Nursing Home Association (Elk Haven) from the order of the Board of Finance and Revenue (Board) sustaining the decision and order of the Department of Revenue (Department) Board of Appeals which determined that Elk Haven was liable for the realty transfer tax in the amount of $47,650.00. We affirm.

On September 29, 1994, a deed was recorded that evidences the transfer of title to 5 acres of land from the Elk County Industrial Development Authority (Authority) to Elk Haven, a Pennsylvania nonprofit corporation. The property was conveyed to the Authority by the Benedictine Sisters of Elk County and the Commissioners of Elk County. The deed conveying the property from the Authority to Elk Haven recited only the nominal consideration of $1.00. On the Affidavit of Value filed at the time the deed was recorded, Elk Haven claimed an exemption from the imposition of the reality transfer tax on the basis that this was a transfer from an industrial development authority to an industrial corporation, pursuant to the Pennsylvania Code.[1] Neither Elk County's assessed value of this property nor the property's fair market value were reported on the Affidavit of Value.

The Department disallowed Elk Haven's claimed exemption and determined the value of the property at $4,765,000.00. The Department then imposed a transfer tax in the amount of $47,650.00, along with interest of an additional $2,004.41. The Department based its valuation on the mortgage and security agreement given to the Authority by Elk Haven. On August 7, 1995, Elk Haven paid the transfer tax under protest and, on October 2, 1995, filed a petition of review with the Department. On June 12, 1995, the Board of Appeals sustained the determination that Elk Haven was liable for the tax. Elk Haven then brought an appeal of this decision to the Board, which sustained the determination of the Board of Appeals. It is from this order that Elk Haven appeals.

On appeal,[2] Elk Haven contends that the Board committed reversible error when it

---

1. See 61 Pa.Code § 91.158.

2. This Court hears determinations of the Board of Finance and Revenue in its appel-

determined that the realty transfer tax is applicable to a conveyance from an industrial development authority to a non-profit corporation when such conveyance is made for nominal consideration pursuant to the Economic Development Financing Law (Law).[3] Elk Haven further contends that the Board committed reversible error when it allowed the imposition of the tax based upon the stated value of a mortgage as opposed to the nominal consideration recited in the deed. We disagree.

■■■■ Elk Haven first argues that the imposition of the realty transfer tax directly conflicts with the Law. To support its argument, Elk Haven directs this Court's attention to Section 6 of the Law, entitled "Purposes and powers; general," for the proposition that because an authority may convey title to property with or **without** consideration, to allow the Department to impose a realty transfer tax on such transactions would be in direct conflict with the Law. Section 6 states:

> (b) Every authority is hereby granted, and shall have and may exercise all powers necessary or convenient for the carrying out of the aforesaid purposes, including but without limiting the generality of the foregoing, the following rights and powers:
>
> . . . .
>
> (9) ... (v) for conveyance with or without consideration of any part or all of a project to the project user or project applicant on or before payment of all bonds and other obligations of the authority incurred with respect to such project. . . .

73 P.S. § 376(b)(9)(v).

The General Assembly has made allowances for two exclusions from the realty transfer tax provisions of the Tax Reform Code of 1971[4] (Code) for conveyances made by industrial development authorities. The first is when there is a transfer from an authority to "a grantee of property conveyed by the grantee to that agency or authority as security for a debt of the grantee or a transfer to a nonprofit industrial development agency or authority." Section 1102–C.3(14) of the Code,[5] 72 P.S. § 8102–C.3(14). The second is where an authority transfers property that is directly used for the "primary purpose of manufacturing, fabricating, compounding, processing, publishing, research and development, transportation, energy conversion, energy production, pollution control, warehousing or agriculture" and the agency or authority has the full ownership interest in the property transferred. Section 1102–C.3(15)(1) of the Code, 72 P.S. § 8102–C.3(15)(i). Here, Elk Haven did not originally transfer the property to the Authority, pursuant to 72 P.S. § 8102–C.3(14), and the operation of a nursing home facility is not a specifically identified exemption under 72 P.S. § 8102–C.3(15); thus the transfer to Elk Haven by the Authority was taxable by the Department under the Act. Because the Act sets out specific exemptions from the realty transfer tax by development authorities, and because the facts in the case at bar do not fall within these exceptions, the Board did not commit an error of law when it determined that Elk Haven was subject to the tax.

■■ Elk Haven's next argument is that, if the transfer tax does apply, as we have found, the tax should be based upon the nominal consideration of one dollar as recited in the deed. The Board found, however, that the amount reflected in the mortgage and security agreement was the true value of the property. Here, Elk

late jurisdiction, but its review is de novo. *Sabatine v. Commonwealth,* 497 Pa. 453, 442 A.2d 210 (1981).

**3.** Act of August 23, 1967, P.L. 251, *as amended,* 73 P.S. §§ 371–386.

**4.** Sections 1101–C to 1113–C of the Code, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 8101–C to 8113–C.

**5.** Section 1102–C.3 of the Code was added by the Act of July 2, 1986, P.L. 318.

Haven directs this Court's attention to the definition of "document" as proof that the imposition of the transfer tax on the mortgage value constitutes reversible error. Section 1101–C of the Code defines a document as:

> Any deed, instrument or writing which conveys, transfers, devises, vests, confirms or evidences any transfer or devise of title to real estate, but **does not include** wills, **mortgages,** deeds of trust or other instruments of like character given as security for a debt and deeds of release thereof to the debtor, land contracts whereby the legal title does not pass to the grantee until the total consideration specified in the contract has been paid or any cancellation thereof unless the consideration is payable over a period of time exceeding thirty years or instruments which solely grant, vest or confirm a public utility easement.

72 P.S. § 8101–C (emphasis added). Elk Haven's contention is that the transfer tax would have to be based upon the deed, because a mortgage instrument itself is not recognized as a document under the Code. However, it is the transfer of the property which is taxed, evidenced by the recording of a deed, and the mortgage is only referred to to establish the value of the property transferred. The Code itself provides a mechanism for the valuation of property that has been conveyed for a nominal consideration. Specifically, 72 P.S. § 8101–C defines value as follows:

> (1) In the case of any bona fide sale of real estate at arm's length for actual monetary worth, the amount of the actual consideration therefor, paid or to be paid, including liens or other encumbrances thereon existing before the transfer and not removed thereby, whether or not the underlying indebtedness is assumed, and ground rents, or a commensurate part thereof where such liens or other encumbrances and ground rents also encumber or are charged against other real estate: Provided,

> That **where such documents shall set forth a nominal consideration, the 'value' thereof shall be determined from the price set forth in or actual consideration for the contract of sale....**

(Emphasis added.) Because there was nominal consideration evidenced in the deed from Elk Haven to the Authority, the Department was allowed, pursuant to the Act, to make a determination of the value based upon the actual consideration. In this case, the Department chose to use the value of the mortgage and security agreement to determine the value of the property for purposes of the transfer tax. We therefore conclude that the Board did not commit reversible error when it accepted this method of valuation.

Judgment is entered in favor of the Commonwealth.

## O R D E R

NOW, August 18, 1999, judgment is entered in favor of the Commonwealth. This order will become final unless exceptions are filed within 30 days of the entry of this order.